[Cite as *Dobbins v. Evans*, 2012-Ohio-898.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RONNIE C. DOBBINS | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2011CA00171 |
| HEATHER EVANS | |
| Defendant-Appellee | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2010JCV00171 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | March 5, 2012 |
| APPEARANCES: | |

For Defendant-Appellee                For Plaintiff-Appellant


RONALD SCOTT SPEARS              JULIE A. SCHAFER
554 White Pond Drive, Suite D         755 White Pond Drive, Suite 403
Akron, Ohio 44320                      Akron, Ohio 44320

*Hoffman, J.*

**(¶1)** Plaintiff-appellant Ronnie C. Dobbins appeals the July 8, 2011 Judgment Entry entered by the Stark County Court of Common Pleas, Family Court Division, which dismissed his motion to show cause, following a hearing. Defendant-appellee is Heather Evans.[1]

STATEMENT OF THE CASE AND FACTS

**(¶2)** Appellant and Appellee are the unmarried parents of J.E. (DOB 7/29/08). On February 16, 2010, Appellant filed a motion requesting visitation with the child. The trial court scheduled the matter for hearing on April 5, 2010. The parties appeared for the hearing on that day and ultimately entered into an Agreed Judgment Entry. The Agreed Judgment Entry specifically provided: "Father shall have two weeks companionship every two months, commencing August, 2010. * * * Both parties shall meet halfway for visitation there and back on weekends." April 5, 2010 Agreed Judgment Entry. The entry is signed by both parties, the magistrate, and the trial court.

**(¶3)** On April 7, 2011, Appellant filed a motion to show cause, requesting the trial court order Appellee to appear and show cause why she should not be held in contempt for violating the April 5, 2010 Agreed Judgment Entry. In his affidavit in support of his motion, Appellant averred he made repeated attempts to visit with J.E., but each time Appellee would prevent such from occurring. The parties appeared for hearing on June 9, 2011. At that time, Appellee requested a continuance to obtain counsel. The trial court rescheduled the matter for July 6, 2011. The trial court advised Appellee to abide by the Agreed Judgment Entry regarding visitation.

---

[1] Appellee has not filed a brief in this matter.

**(¶4)** At the July 6, 2011 hearing, Appellant testified regarding the April 5, 2010 Agreed Judgment Entry, and the parenting time he was to receive pursuant thereto. Appellant stated when he attempted to exercise his parenting time in August, 2010, the conversation with Appellee ended in an argument. Appellant subsequently learned Appellee and the child had moved to North Carolina. Appellee did not notify Appellant of her intentions to move and did not provide Appellant with an address. Sometime in May, 2011, after he filed his motion for contempt, Appellant learned Appellee and the child had returned to Ohio.

**(¶5)** Therefore, Appellant contacted Appellee to arrange his parenting time, however, that conversation also ended in an argument. After the parties appeared before the trial court on June 9, 2011, Appellee was ordered to provide Appellant with his parenting time. Appellant testified while he was placing J.E. in his car seat, Appellee's boyfriend and mother started yelling and cursing at him. According to Appellant, Appellee's boyfriend grabbed him by the throat and threw him up against the car. Police were called to the scene and Appellant pressed charges. On cross-examination, Appellant stated at the time the parties entered into the April 5, 2010 Agreed Judgment Entry, Appellee lived in Alliance, Ohio, and Appellant lived in Mason, Ohio. The parties had agreed to the longer length of the actual visit and the longer gap between the visits because of the distance between them.

**(¶6)** Appellee testified as to the specifics of the parenting time under the April 5, 2010 Agreed Judgment Entry. Appellee stated Appellant was to start exercising his parenting time on August 1, 2010. She indicated the visit did not occur, explaining Appellant had cancelled because he could not get the time off from work. Appellee

moved to North Carolina in late April, 2010. Appellee claimed the parties came to the agreement on the visitation because Appellant knew she was moving out of state. Appellee testified she provided Appellant with her new address on April 5, 2010. Appellee acknowledged she had told Appellant the only way he would be able to see J.E. would be to travel all the way to North Carolina, but explained it was Christmastime and she did not want to travel because of the weather.

**(¶7)** Appellee relocated to Ohio at the end of January, 2011. Appellee stated she notified Appellant she had returned to Ohio and he could come see J.E. On cross-examination, Appellee acknowledged the conversations between Appellant and herself often became heated. She further conceded, due to the argumentative nature of the conversations, much information did not get relayed. Although Appellee agreed Appellant had not had ten weeks of parenting time over the previous fourteen month period, she had nonetheless offered him time to spend with J.E. Appellee noted she had informed Appellant, while they were negotiating the April 5, 2010 Agreed Judgment Entry, she was potentially moving to North Carolina. Appellee explained the move was the reason for the time period set up in the visitation schedule. Appellee added Appellant knew at all times where she was, where his son was, and that his son was safe.

**(¶8)** On re-direct examination, Appellee stated whenever she spoke with Appellant about exercising his parenting time, Appellant would tell her he was unavailable. Appellee indicated she had willingly signed the April 5, 2010 Agreed Judgment Entry, but acknowledged she had reneged on it. Appellee defended her

behavior, stating she had been willing to abide by the terms of the Agreed Judgment Entry, except on one occasion.

**(¶9)** After hearing the testimony, the trial court found Appellant had not established Appellee acted willfully.  Via Judgment Entry filed July 8, 2011, the trial court dismissed Appellant's Motion for Contempt.

**(¶10)** It is from this judgment entry Appellant appeals, raising as his sole assignment of error:

**(¶11)** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT APPELLEE WAS NOT IN CONTEMPT OF THE COURT'S PRIOR ORDERS AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

**(¶12)** An appellate court's standard of review of a trial court's contempt finding is abuse of discretion. *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 573 N.E.2d 62. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**(¶13)** While contempt can be direct or indirect, this matter clearly concerns indirect contempt, which is defined as behavior which occurs outside the presence of the court and demonstrates a lack of respect for the court or its lawful orders.  *Sansom v. Sansom,* 10th Dist. No. 05AP–645, 2006–Ohio–3909, ¶ 23.

**(¶14)** Contempt may be classified as either criminal or civil in nature.  *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 254, 416 N.E.2d 610. A civil contempt

citation is used to force compliance with a court order or judgment whereas a criminal contempt citation is imposed solely for the purpose of punishment. *Id.*

(¶15)  Although both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment.  *State v. Kilbane* (1980), 61 Ohio St.2d 201, 205, 400 N.E.2d 386. "The purpose of civil contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 58, 271 N.E.2d 815. Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. *Brown,* supra, at 253. Prison sentences are conditional. *Id.* The contemnor is said to carry the keys of his prison in his own pocket, since he will be freed if he agrees to do as ordered. *Id.* (Citation omitted). Contempt can only occur, however, "where the contemnor has the power to perform the act listed in the court order but fails to do so." *Schaefer v. Schaefer,* 2d Dist. No.2004–CA–65, 2005–Ohio–3063, ¶ 13, citing *Wilson v. Columbia Cas. Co.* (1928), 118 Ohio St. 319, 328–329, 160 N.E. 906.

(¶16)  Interference with visitation is typically redressed in family courts via civil contempt. See, e.g., *Montgomery v. Montgomery,* 4th Dist. Nos. 03CA2923, 03CA2925, 2004–Ohio–6926, ¶ 13 (Citation omitted).

(¶17)  "A prima facie case of civil contempt is made when the moving party proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf,* 1st Dist. No. C–090587, 2010–Ohio–2762, ¶ 4. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Flowers v. Flowers,* 10th Dist. No. 10AP–1176, 2011–Ohio–5972, ¶ 13.

**(¶18)** In the instant action, the trial court found Appellant failed to prove Appellee's refusals were willful; therefore, negating a finding of contempt. We disagree with the trial court's rationale. Because the nature of the contempt is civil, "willful disobedience" (i.e., intent) is not a necessary element. *Pugh v. Pugh,* 15 Ohio St.3d 136, 140, 472 N.E.2d 1085.

**(¶19)** We find Appellant established a prima facie case of civil contempt. Appellee acknowledged the existence of, and her agreement to, the April 5, 2010 Agreed Judgment Entry. She conceded she had refused to "meet halfway" in order for visits between Appellant and J.E. to occur. Because Appellant established a prima facie case of civil contempt, we find the trial court abused its discretion in finding Appellee was not guilty of contempt.

**(¶20)** Appellant's sole assignment of error is sustained. The judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with this Opinion and the law.

By: Hoffman, J.

Gwin, P.J. and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ John W. Wise_____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

RONNIE C. DOBBINS               :
                                  :

    Plaintiff-Appellant         :
                                    :

-vs-                          :             JUDGMENT ENTRY
                                    :

HEATHER EVANS             :
                                    :

    Defendant-Appellee      :             Case No. 2011CA00171

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is reversed and the matter remanded for further proceedings consistent with our Opinion and the law. Costs to Appellee.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


s/ John W. Wise_____
HON. JOHN W. WISE